## PAGE v. SKINNER.*

(Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

No. 6440.

1. Internal revenue ⊜≫2—Revenue act of 1916 applies to estate of one dying before act of 1918 went into effect.

Revenue Act Sept. 8, 1916, as amended by Act March 3, 1917, and Act Oct. 3, 1917, applies to estate of one dying before Revenue Act of 1918 took effect, though estate tax had not been paid before act of 1918 went into effect, in view of sections 401, 1400, of the later act (Comp. St. Ann. Supp. 1919, §§ 6336¾b, 6371¾a).

2. Internal revenue ⊜≫26—Estate tax becomes a lien on property at decedent's death.

Imposition of estate tax takes effect at time of death, and tax becomes at once a lien on estate property, enforceable by sale, if not paid.

3. Internal revenue ⊜≫36—No implied promise to return part, where correct amount paid.

Where correct amount of tax imposed has been paid, there can be no implied promise for return of any part of it.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by Louise B. Page against Mark A. Skinner. A judgment of dismissal was entered (293 Fed. 468), and plaintiff brings error. Affirmed.

William B. Harrison, of Denver, Colo., for plaintiff in error.

John A. McCann, Asst. U. S. Atty., of Denver, Colo., and Thomas H. Lewis, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Granby Hillyer, U. S. Atty., of Denver, Colo., and Nelson T. Hartson, Solicitor of Internal Revenue, of Washington, D. C., on the brief), for defendant in error.

Harvey Riddell, of Denver, Colo. (Benedict & Phelps, of Denver, Colo., on the brief), amicus curiæ.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. [1] This is an action to recover in one count all and in another count a part of the amount paid as a tax imposed upon the transfer of the net estate of William Byrd Page, in accordance with the provisions of the Act of September 8, 1916 (39 Stat. 777), as amended by the Acts of March 3, 1917, and October 3, 1917 (39 Stat. 1002; 40 Stat. 324). Mr. Page died testate September 4, 1918. The plaintiff in error was his sole devisee and legatee and named as executrix. The tax became due and payable one year after decedent's death, and as executrix she filed with the collector on November 21, 1919, her statutory return, setting forth:

"(a) The value of the gross estate of the decedent at the time of his death; * * * (b) the deductions allowed under section two hundred and three; (c) the value of the net estate of the decedent as defined in section two hundred and three." Section 205 (Comp. St. § 6336½f).

The Act of February 24, 1919 (40 Stat. 1096 [Comp. St. Ann. Supp. 1919, § 6336¾b]), was in effect when the return was filed, and it ap-

pears that the executrix contended that the prior Acts had been repealed by the Act of February 24th without a saving clause (Comp. St. Ann. Supp. 1919, § 6371¾a), and that no tax could be assessed; or if assessable, the amount of the tax should be ascertained by computation on the net value of the estate at the rates specified in the later Act, which were less than the rates named in the prior Acts. Both contentions were rejected, the tax was assessed according to the rates given in the prior Acts, and the amount so ascertained was paid under protest. There was no controversy as to the net value of the estate; it was correctly given in the return. In all of the Acts the net value is divided up into specified amounts or blocks, and the amount of the tax arrived at by taking a named per cent. of each block and then adding together the sums found. The total amount thus ascertained as to this estate was almost twice as much, when the per cents. given under the 1916 Act as amended are applied, as it would have been if the percentages named in the 1919 Act were applied. The phraseology of the two Acts is the same in its main purpose:

"That a tax *, * * is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act,"

—the schedule of rates to be applied to the net value follows.

[2] The imposition took effect at the time of death and the tax became at once a lien on the property of the estate, enforceable by sale, if not paid, on proceedings in court. New York Trust Co. v. Eisner, 256 U. S. 345, 41 Sup. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660. There was no personal liability. Shortly after the executrix made her return decedent's estate was closed and she brought this action in her personal right as sole beneficiary.

The case comes here from an order sustaining demurrer to each count and dismissal of the action. We think it clear, as will appear from further discussion, that it was not the intention of Congress to wholly release estates in the condition in which this was, from the tax imposed by the amended Act of 1916; the question that challenges consideration is, whether it was intended by the Act of February 24, 1919, to substitute the lower rates named in the Act of 1919 for the higher rates found in the Act of 1916, as applicable to estates in which assessments had not been made and the tax had not become due and payable at the time the later Act took effect. The two Acts require in identical language that the commissioner shall make all assessments of the tax under the authority of the existing administrative special and general provisions of law relating to the assessment and collection of taxes; and that the executor shall make and file with the collector the same kind of return, setting forth:

"(a) The value of the gross estate; (b) the deductions allowed by the act; (c) the value of the net estate; and (d) the tax paid or payable thereon."

Each Act provides that the tax shall be due one year after decedent's death. Each allows an exemption of $50,000. There are some differences in the two Acts as to times of payment and forfeitures to be imposed which, we think, need not be noted in detail. Notwithstanding the provision in each Act that the commissioner shall make all assess-

ments, it may be conceded for our purposes, as contended by counsel for defendant in error, that where a return shows the net value of the estate the law makes the assessment, and it· is only when no return or a false return is made that the collector must go about gathering the facts and exercise the ‚power given to make an assessment; but in neither contingency do we think it could be said that an assessment is made until the collector has at hand a statement showing the net value. The tax is assessed on the net value of the estate, and whether made by the commissioner or by operation of law, the assessment must await the ascertainment of the net value. Liabilities of the decedent and administration expenses must be ascertained and deducted from the gross value for that purpose, and time is given by each Act so that may be done.· The imposition of the tax immediately on death and the simultaneous lien antedate the assessment.

‚We come to the Act of February 24, 1919, and it is agreed that the legislative intent as to whether the rates which it prescribes for purposes of assessment should be applied to the conditions we have here, is primarily to be found in ˉsection 1400 of the later Act (Comp. St. Ann. Supp. 1919, § 6371¾a). But first, we make note of section 401 of the later Act (Comp. St. Ann. Supp. 1919, § 6336¾b), and observe that it sheds some light on the inquiry, whether section 1400 discloses an intention that estates under the conditions in hand should be assessed at the lower rates fixed by the later Act. Section 401 reads:

"Sec. 401. That (in lieu of the tax imposed by Title II of the Revenue Act of 1916, as amended, and in lieu of the tax imposed by Title IX of the Revenue Act'of 1917) a tax equal to the sum of the· following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after·the passage of this Act, whether a resident or nonresident of the United States."

Following this and as a part of section 401 is the schedule of rates to be applied, lower than the rates found in the prior Acts. The lower rates given in this section are to be applied to estates of decedents dying after February 24, 1919. But that is a subject separate and apart from the inquiry, whether other parts of the Act (section 1400) discloses an intention that those rates shall be applied also to estates of decedents dying prior to February 25, 1919, the tax imposed thereon not then being due and payable and no assessment against the same having theretofore been made. Does section 1400 of the later Act disclose such an intention? It reads:

"Sec. 1400. (a) That the following parts of Acts are hereby repealed, subject to the limitations provided in subdivision (b):
"(1) The following titles of the Revenue Act of 1916:
"Title I (called 'Income Tax');
"Title II (called 'Estate Tax') ;
"Title III (called 'Munitions Manufacturers' Tax') * * * ;
"Title IV (called 'Miscellaneous Taxes').
"(2) The following parts of the Act entitled 'An Act to provide increased revenue to defray the expenses of the increased appropriations for the Army and Navy and the extensions of fortifications, and for other purposes,' approved March 3, 1917:
"Title III (called 'Estate Tax') ;
"Section 402 (called 'Returns of Dividends').
"(3) The following titles of the Revenue Act of 1917:

"Title I (called 'War Income Tax') ;
"Title II (called 'War Excess-Profits Tax') ;
"Title III (called 'War Tax on Beverages') ;
"Title IV (called 'War Tax on Cigars, Tobacco, and Manufactures Thereof') ;
"Title V (called 'War Tax on Facilities Furnished by Public Utilities, and Insurance') ;
"Title VI (called 'War Excise Taxes') ;
"Title VII (called 'War Tax on Admissions and Dues') ;
"Title VIII (called 'War Stamp Taxes') ;
"Title IX (called 'War Estate Tax') ;
"Title X (called 'Administrative Provisions') ;
"Title XII (called 'Income-Tax Amendments').

"(b) Such parts of Acts shall remain in force for the assessment and collection of all taxes which have accrued' thereunder, and for the imposition and collection of all penalties or forfeitures which have accrued and may accrue in relation to any such taxes, and except that the unexpended balance of any appropriation heretofore made and now available for the administration of any such part of an Act shall be available for the administration of this Act or the corresponding provision thereof: Provided, That, except as otherwise provided in this Act, no taxes shall be collected under Title I of the Revenue Act of 1916 as amended by the Revenue Act of 1917, or Title I or II of the Revenue Act of 1917, in respect to any period after December 31, 1917: Provided further, That the assessment and collection of all estate taxes, and the imposition and collection of all penalties or forfeitures, which have accrued under Title II of the Revenue Act of 1916 as amended by the Act entitled 'An Act to provide increased Revenue to defray the expenses of the increased appropriations for the Army and Navy and the extensions of fortifications, and for other purposes,' approved March 3, 1917, or Title IX of the Revenue Act of 1917, shall be according to the provisions of Title IV of this Act. In the case of any tax imposed by any part of an Act herein repealed, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act."

The important parts of this section bearing on our inquiry are found in sub-paragraph (b), reading thus:

"Such parts of Acts shall remain in force for the assessment and collection of all taxes which have accrued thereunder, and for the imposition and collection of all penalties or forfeitures which have accrued and may accrue in relation to any such taxes."

This is a general saving clause broad enough to cover all of the different named taxes, including the Estate Tax, specified under (a) of the preceding part of the section. The next part of sub-paragraph (b) bearing on the inquiry is the second proviso, which takes out of and eliminates from the general saving clause above quoted "Estate Taxes" imposed by the two prior Acts to the extent and for the purposes named. It reads:

"That the assessment and collection of all estate taxes, and the imposition and collection of all penalties or forfeitures, which have accrued under" the two prior Acts, "shall be according to the provisions of Title IV of this Act."

Title 4 of the Act of February 24 includes section 401 above quoted. The third part of sub-paragraph (b) bearing on the inquiry is its last sentence, reading thus:

"In the case of any tax imposed by any part of an Act herein repealed, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act."

For the purposes of this case we take the last sentence as an expression of a clear intention that the parts of the two prior Acts imposing estate taxes were not repealed as to all estates of decedents dying prior to February 25, 1919; and we may add that, impliedly, the liens given by the prior Acts for the collection of the taxes which they imposed were intended also to continue. This sentence will need further consideration. Neither are we in doubt as to the meaning of the word "accrued," found in sub-paragraph (b); as contended by counsel amici curiæ, who appear for another estate in like conditions, that it is equivalent to *arising under* and refers to all taxes, including estate taxes, arising under the prior Acts and is not a restriction to those that were due and payable prior to February 25th. It is argued that the part of sub-paragraph (b) which determines, or largely determines the inquiry whether it was intended that estate taxes of decedents dying prior to February 25th, which were not then due and payable and had not been assessed, should be at the lower rate provided for in the later Act, is the second proviso. It says that the assessment and collection of all estate taxes and the imposition and collection of all penalties and forfeitures which have accrued under the prior Acts shall not be made according to the provisions of the prior Acts but according to the provisions of the later Act. The rate of taxation is an indispensable element in the assessment, as much so as the value on which it is to be laid. Without either no assessment can be made.

Let us now go back to the Act of 1916 as amended. The sections of the original Act and of the amending Act which impose the tax each contains as a part thereof the schedules of rates to be applied to the net value of estates in ascertaining the amount of the tax, and declares that the tax imposed equals those percentages. No tax estimated on net value as a basis could be imposed without a rate, nor could an assessment be made if Congress had not fixed the rate,—directly, as it did, or indirectly. The declaration that a tax was imposed on the transfer of the net value of estates would have been meaningless, without a fixed or definitely ascertainable rate. The fixing of the rates to be applied to the net estate was requisite to imposing the tax, an indispensable element in the imposition. It therefore seems plain that the last sentence in sub-paragraph (b) of section 1400 of the later Act, in saving from repeal the parts of the prior acts which imposed an estate tax, retained the schedule of rates fixed by the prior Acts, else there would have been no parts of those Acts imposing the tax. Again, section 401 of the later Act imposing a tax on the estates of decedents dying after its passage, in lieu of the tax imposed by the prior Acts, limits the application of the rates found in that section to estates of decedents dying after the date on which that Act took effect. These considerations, we think, show the fallacy of the contention that the net estate of William Byrd Page should have been assessed in accordance with the rates found in section 401 of the Act of February 24, 1919. To accede to the contention, which rests, we think, on the meaning which we are asked to give to the word assessment, is but to bring the second proviso in direct conflict with the last sentence of sub-paragraph (b), which, as we have already held, saved from repeal the tax

imposed by the prior Acts according to the rates which they fixed, and at the same time to apply the rates found in the later Act to a purpose not intended by the section in which they are found.

[3] But whatsoever may be the function that the word serves in administrative procedure, the correct amount of tax imposed has been paid, the action is in assumpsit and there can be no implied promise for the return of any part of it. Bailey v. Railroad Co., 22 Wall. 604, 638, 22 L. Ed. 840.

The action of the court in sustaining the demurrer to both counts is approved and the judgment of dismissal is

Affirmed.