## CRANE et al. v. HELVERING, Commissioner of Internal Revenue.

### No. 186.

Circuit Court of Appeals, Second Circuit.

March 11, 1935.

James H. Hoffnagle, of New York City, for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to the Atty. Gen., for the Commissioner.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Crane, the petitioners' testator, who died on April 16th, 1930, had owned a parcel of land since before March 1st, 1913, of which he sold a part on May 17th, 1929. He received in payment $10,000 in cash, and a purchase money bond and mortgage for $390,000. The value of the land on March 1, 1913, was $125,000, and he elected under section 44 (b) of the Revenue Act of 1928 (26 USCA § 2044 (b), to return his profit upon an installment basis, which the Commissioner allowed. By the time of his death the bond and mortgage had been reduced to $387,000 and its fair market value was $344,-430. The taxpayers, Crane's executors, filed a return under section 44 (d) of the act (26 USCA § 2044 (d) on the assumption that by his death the mortgage had been "transmitted," in which event the statute made its fair market value the minuend in an equation of taxable gain. The income which they so returned, the Commissioner raised, and they concede that in so doing his figures were right, but, being now better advised, they protest the deficiency and declare that they will demand a refund, be-cause they were entitled to continue to return only the installments as they fell due. The Board decided against this position and they appeal (petition to review).

As to the meaning of section 44 (d) the Board was certainly right. The full phrase is "distributed, transmitted, sold or otherwise disposed of"; "distributed" is fairly apt to cover dividends, and "transmitted," to mean devolution by will or by law. It is, however, only fair to say that the text is not entirely clear, and we are justified in recourse to the reports of the committees of Congress. There had been a lacuna in the law as it had stood in 1926, because when an obligation received upon a sale reached the hands of a legatee, he could use its value at that time as his "basis." Thus any earlier gain escaped income taxes except as to the installments already paid before the testator's death. It was to remedy this that section 44 (d) was amended. This appears very clearly from the report of the Ways and Means Committee of the House, and of the Finance Committee of the Senate.[1] Thus: "Subsection d contains new provisions of law to prevent evasion of taxes in connection with the transmission of installment obligations upon death, their distribution by way of liquidating or other dividends or their disposition by way of gift or in connection with similar transactions." "Transmission" meant devolution by death. There remains therefore only the question of constitutionality, as to which the argument is as follows: The debt, though secured by the property sold, may be of less value than its face when received; usually it is. If so, it is likely to increase between its receipt by the testator and his death, and section 44 (d) taxes that increase, though it is not "realized." Under Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, such an increase is not income and is beyond the power of Congress under the Sixteenth Amendment. To this it would indeed be answer enough to say that no such situation here confronted the Board; the executors proved no increase in the value of the bond and mortgage from the time Crane took it until his death. Normally no one may challenge the validity of a law who is not himself aggrieved. Louisville & Nashville R. R. Co. v. Finn, 235 U. S. 601, 608, 35 S. Ct. 146, 59 L. Ed. 379. But we are not content to leave the matter at large. The statute might have

[1] House Report No. 2, 70th Congress, 1st Session, pp. 14 and 16; Senate Report, 70th Congress, 1st Session, pp. 22 to 24.

taxed at once a gain based upon the value of the bond and mortgage, for that was "realized" as soon as they were received. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 53 S. Ct. 257, 77 L. Ed. 428; Rusk v. Com'r, 53 F.(2d) 428 (C. C. A. 7); Wolfson v. Reinecke, 72 F.(2d) 59 (C. C. A. 7). It is true that in these cases the obligations were all short term notes, while here it was a bond and mortgage; but the principle is the same in either case. If a note or other promise, payable in a later. taxable year, is "realized" on its receipt, it can make no difference how long the payment is deferred; whether for ten years, or for only one. Section 44 (b) gave the taxpayer a privilege to avoid such a tax if he wished, but affixed to. it the condition that if he died, the value of the obligation should be regarded as then realized. That risk he was free to accept or not at his pleasure; if it chanced that the obligation had risen in value meanwhile his election might prove a loss. It makes no difference that the increase was itself "unrealized" and perhaps beyond the powers of Congress to tax in invitum. It was not so taxed; it was taxed with the taxpayer's consent and in consideration of escaping a tax of indubitable validity. The sanction being valid, the consequences of its coercion were also lawful. But if there be a remaining doubt, as possibly there might be if the exaction had had no relation whatever to income, we may rest upon the taxation of accrued gains when the taxpayer keeps his books on an accrual basis. Those are as much "unrealized" as any putative increase here. The taxpayer's consent is enough to subject them to income tax, since they are a voluntary substitute for assessments certainly, valid.

Order affirmed.