### LAWLER et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7497.

Circuit Court of Appeals, Ninth Circuit.

July 9, 1935.

Oscar Lawler, James E. Degnan, and William T. Coffin, all of Los Angeles, Cal., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Frederick W. Dewart, L. W. Post, and Francis A. Le Sourd, Sp. Assts. to Atty. Gen., for respondent.

Donald Barker and Harry A. Keithly, both of Los Angeles, Cal., and Raymond H. Berry, Arthur L. Evely, and Ralph W. Barbier, all of Detroit, Mich., amici curiæ.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

Petitioners, the executors of the last will and testament of Erskine M. Ross, deceased, who died on December 10, 1928, have petitioned for a review of the decision of the Board of Tax Appeals sustaining deficiencies determined by the Commissioner in the decedent's income taxes for the years 1923, 1924, 1925, 1926, and 1928.

Prior to March 1, 1913, decedent acquired a tract of land situated near the city of Glendale, county of Los Angeles, state of California, comprising some 703 acres. On February 10, 1923, decedent entered into an agreement with Haddock-Nibley Company, a corporation, for the subdivision and sale of this tract of land. Pursuant to this agreement decedent conveyed title to this tract of land to Security Trust & Savings Bank of Los Angeles, as trustee, and the trustee bank executed a declaration of trust dated March 22, 1923, in which the agreement of February 10, 1923, was incorporated by reference and annexed thereto as an exhibit. These two instruments form the contract involved in the case at bar. The controversy is over the amount of income taxes which should have been paid on account of payments decedent received from the trustee bank pursuant to the terms of the contract and by reason of the transmission of the deferred payments at the time of decedent's death. The March 1, 1913, value of the land covered by the contract and other essential facts have been stipulated, and the only questions necessary for us to consider are as to the proper construction of the contract and the constitutionality and applicability of section 44 (d) of the Revenue Act of 1928 (26 USCA § 2044 (d).

Petitioners contend that the contract above referred to granted to the "buyer" an option to purchase the 703 acres in parcels; provided that the "buyer" might exercise such option as to any particular parcel by preparing and recording a subdivision plat thereof; and provided that when a subdivision plat of any parcel was so recorded a separate sale of that parcel resulted. Respondent, on the other hand, contends that the contract was properly construed by the Board of Tax Appeals to be an installment sale of the entire 703 acres.

There is no difference between the parties as to what differentiates a contract of sale from an option to purchase. The Board of Tax Appeals quoted the rule in that regard from Stelson v. Haigler, 63 Colo. 200, 165 P. 265, 3 A. L. R. 550, as follows: "A contract of sale implies mutual obligations on the part of the seller to sell and on the part of the buyer to buy while an option gives the right to purchase, within a limited time, without imposing any obligation to purchase"—citing, James on Option Contracts, § 105, and authorities cited; Hessell v. Neal, 25 Colo. App. 300, 137 P. 72. The Board of Tax Appeals also cites a California case to the same effect, Brickell v. Atlas Assur. Co., 10 Cal. App. 17, 22, 101 P. 16.

Documents executed between the parties occupy 44 pages of the transcript, and we will not undertake to summarize them. There are many provisions in the contract and trust agreement and the documents subsequently executed between the parties which would lead to the conclusion that the contract was one of purchase and sale. These elements of the contract are set out in the opinion of the Board of Tax Appeals, and we refer to that opinion for a more detailed statement. Suffice it to say

that throughout the documents the sum of $1,600,000 is frequently referred to as the purchase price, the decedent is referred to as the seller, and the Haddock-Nibley Company, Inc., as the buyer; there was an initial payment of $34,350 by the buyer and an assumption of an indebtedness of $65,-650. The buyer not only agreed to pay the initial payment of $34,350, but it was also agreed in the declaration of trust "that the trustor shall receive the aforementioned sum of $1,600,000.00 as follows: $175,000 either through sales of property in the manner contemplated by this trust, or otherwise on or before two years from this date, and the balance at the rate of not less than $175,000 per annum, either through sale of property or otherwise," etc.

It will be observed that there is no express agreement that the buyer will pay these amounts, although the instruments would undoubtedly be so interpreted in the absence of other controlling provisions. The agreement between the parties expressly provides that the buyer shall assume and pay the mortgage indebtedness of $65,600, and, in addition, the sum of $34,350, and that in consideration thereof and of the other obligations of the buyer the seller should convey the property in trust. The agreement provided that the buyer should survey and plat said property in subdivisions and parcels as selected by it; said subdivisions to be approved by the seller before being recorded. The contract contained the following provisions: "As soon as a tract or subdivision has been platted and the plat approved and filed as hereinbefore provided for, the total value of the land in such subdivision shall be deemed a debt due and owing by the buyer to the seller, which value shall be the total release price for all of the property shown on said plat, and such total value shall from the date of the filing of the said plat for record bear interest at the rate of six per cent per annum, payable semi-annually, and be payable as such by the buyer to the seller." This is equivalent to saying that no part of the purchase price of $1,600,000 should be deemed a debt until some portion of the real estate is subdivided and platted, and then that the debt should be the value placed upon that portion of the land so subdivided. If this is true, it is clear that the transaction amounted to an option to be exercised by the buyer by the subdividing and platting of a parcel of land within the larger area. The agreement also fixes the rights of the parties in a case of failure of the buyer to perform his obligations with diligence. Without quoting these provisions of the contract, it is sufficient to say there is no provision for the payment by the buyer of any portion of the purchase price after the seller has exercised his option to terminate the contract. It is provided that all sums theretofore paid shall be retained by the seller as "liquidated damages."

While the contract is unusual in some of its aspects, the deeding of the property in trust is in accord with the custom in the vicinity of Los Angeles, and it is evidently contemplated by the parties that all sums paid the seller should be derived from the subdivision and sale of the property, except the initial payment. The agreement was so framed that the buyer took his expenses and his share of the profits in connection with each lot sold subject, of course, to the obligation to pay the contract price per acre for each piece of land subdivided.

It is particularly significant that the purchase price of $1,600,000 does not bear interest from the date of the contract, but that the only interest provided in the contract is upon the proportion of such sum allocated to the several parcels of land which are subdivided and for sale. We conclude that the transaction was not one of purchase and sale of the 703-acre tract, but, as petitioners claim, an option to purchase the same in parcels.

The respondent relies upon Suburban Improvement Co. v. Scott Lbr. Co. (C. C. A.) 59 F.(2d) 711, 714, 87 A. L. R. 555. In that case the buyer agreed to buy and pay for at least $20,000 worth of lots each year. It is held this express agreement was not modified by the provision in the contract that "this contract constitutes an option." There is nothing in that case inconsistent with the conclusion we have reached.

We then approach the consideration of the next question on the theory that by platting, subdividing, and recording a plat of 132.253 acres of land in 1923 within the larger area of 703 acres covered by the contract, there is a binding agreement of purchase and sale between the parties at the purchase price of $4,000 per acre, aggregating $529,012. Other smaller subdivisions occurred later, but were all reported as closed transactions in the year when

the land was subdivided, and hence, need not be considered. Of the purchase price of $529,012 during the years 1924 to 1928, inclusive, the sum of $443,246.96 was paid. The balance unpaid at the time of decedent's death was $85,765.04, and on the assumption that section 44 (d) of the Revenue Act of 1928 applies, the amount of tax thereon as computed by appellant was $3,967.85, instead of the sum which was fixed by the Commissioner and approved by the Board of Tax Appeals on the theory that the entire property (703 acres) had been sold, and that the balance due at the death of the seller was the amount unpaid on the total purchase price. The tax thus estimated amounted to $22,639.76. Petitioners contend that section 44 (d) of the Revenue Act of 1928 was not intended to apply to contracts executed prior to the enactment of the statute and that if it is construed so to apply it is unconstitutional as to contracts executed before January 1, 1928, because, it is contended, the election by the taxpayer to pay on the installment basis results in an agreement between the taxpayer and the government to pay and to accept such installments as they accrue, which Congress has no power to repudiate, and, consequently, has no power to make the statute applicable to installment payments arising under contracts executed prior to January 1, 1928.

Subsequent to the decision of the Board of Tax Appeals in this case sustaining the constitutionality and applicability of section 44 (d) of the Revenue Act of 1928, the Board of Tax Appeals followed its decision in this case in a number of cases, one of which has since been affirmed by the Circuit Court of Appeals of the Third Circuit, Provident Trust Co. of Phil. v. Com'r, 76 F.(2d) 810; and another by the Circuit Court of Appeals for the Second Circuit, Crane v. Helvering, 76 F.(2d) 99. The Circuit Court of Appeals for the Tenth Circuit, in Nuckolls v. U. S., 76 F.(2d) 357, also sustains the constitutionality of section 44 (d) of the Revenue Act of 1928. The Court of Claims has also passed upon the constitutionality of section 44 (d) in Moore v. U. S. (Ct. Cl.) 10 F. Supp. 143.

We have no doubt that these decisions are correct in so far as they hold that as to installments not collected at the time of the death of the seller of property upon the installment plan the tax upon such installments may be assessed and collected at the time of death. Petitioners, however, point out that in none of these cases, except the decision by the Court of Claims in Moore v. U. S., supra, was the question considered as to whether or not Congress has power to make section 44 (d) of the Revenue Act of 1928, applicable to sales on the installment plan which have been made prior to the enactment of that law, and reiterates their contention that as to such deferred payments Congress has no power to authorize or levy the tax at the time of death. In considering this question, the history of the legislation is significant. The Secretary of the Treasury, by his regulations, had permitted vendors who sold property on the installment plan to make return of the profits pro rata at the time the installments were paid. (Treas. Regulations 45 and 42, promulgated under the Revenue Act of 1918.) This regulation was held by the Board of Tax Appeals to be void. Appeal of B. B. Todd, Inc., 1 B. T. A. 762. To meet this situation, Congress in 1926, passed the act permitting the segregation of the income of the taxpayer derived from the installment sales pro rata as the installments were paid. Section 212 (d) and section 1208, Revenue Act 1926, 26 USCA §§ 953 (d), 953a. See Willcuts v. Gradwohl (C. C. A.) 58 F. (2d) 587, for a statement of the history of the legislation and litigation concerning installment contracts. Subsequently the question arose as to the effect of the seller's death upon the income to be derived from installments payable after death. It was held that as to these installments the income of the respondent, whether heir or legatee, should be ascertained by taking the difference between the value of this installment at the time of the death as the basis and deducting this basis from the installment paid. Crane v. Helvering, supra. As result that portion of the profit uncollected at the time of death was not taxed. To remedy this situation, section 44 (d) was enacted by Congress in the Revenue Act of 1928. Certainly it cannot be said that the fact that a party has taken advantage of an election to pay a tax in installments instead of at one time, is such a contract between the government and the taxpayer as prevents taxation upon income to accrue in any other or different manner than that provided by law at the time the taxpayer elected to pay in installments. His election was made with knowledge on his part of the power of Congress to make such changes. The decisions of

the Supreme Court in Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, and Blodgett v. Holden, 275 U. S. 142, 276 U. S. 594, 48 S. Ct. 105, 72 L. Ed. 206, apply to retroactive taxation upon transactions not taxable at the time they occurred which were fully consummated before the law was enacted and are not applicable here.

Amici curiæ suggest that there was no realizable gain at the time of the death of the seller; therefore the attempt to impose a tax because of death is a direct tax and violates the Constitution within the meaning of the Supreme Court in Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 570. The answer made to this proposition in the recent cases on that subject which we have cited is that the realizable gain occurred at the time of the sale, and that the payment of that gain in installments is a privilege extended to the taxpayer. We agree with these decisions and for that reason without further discussion hold that section 44 (d) of the Revenue Act of 1928 is constitutional in that regard.

The decision of the Board of Tax Appeals is reversed, with directions to reestimate the tax in accordance with this opinion.