ESTATE OF LEONIDAS C. PAPSON, DECEASED, COSTA L. PAPSON, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10249–76.    Filed August 17, 1983.

*Costa L. Papson*, for the petitioner.
*Julius A. Jove* and *Jo-Ann W. Fox*, for the respondent.

### SUPPLEMENTAL OPINION[1]

TANNENWALD, *Judge*: This case is before us on a Rule 155[2] computation to determine the amount of interest to be allowed as an administration expense pursuant to section 2053(a)(2).[3] The sole issue for decision is whether petitioner, which elected under section 6166 to pay its estate tax on the installment method, is constitutionally protected from paying interest on the amount outstanding after June 30, 1975, at the variable rate enacted by Congress in 1975 (sec. 6621). This issue is one of first impression as far as the constitutional issue raised by petitioner is concerned.[4]

The decedent died on July 2, 1973, owning, inter alia, as a closely held business, a shopping center. Because the value of the shopping center exceeded 35 percent of the value of the gross estate and 50 percent of the taxable estate, petitioner was eligible, pursuant to section 6166, to pay its estate tax liability in equal installments, with interest, over 10 years. Petitioner's executor timely elected the installment method in March 1974, at which time interest was charged, pursuant to section 6601(b), at a rate of 4 percent.

In 1975, Congress amended the statute, via section 6621 and the repeal of section 6601(b), to raise the existing interest rate from 4 percent for estate tax liabilities payable under section

---

[1]See 74 T.C. 1338 (1980) and 73 T.C. 290 (1979).

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

[3]Although this Court generally lacks jurisdiction to determine interest (see *Commissioner v. Kilpatrick's Estate*, 140 F.2d 887 (6th Cir. 1944), affg. a Memorandum Opinion of this Court; *Hudgins v. Commissioner*, 55 T.C. 534, 538 (1970)), this rule addresses interest assessable after a deficiency has been determined rather than interest deductible as an administration expense in determining the deficiency.

[4]The only other case, *Estate of Adams v. United States*, 550 F.Supp. 175 (N.D. Okla. 1981), did not address the constitutional issue.

6166 (6 percent for most other tax liabilities) to 9 percent and authorized the Secretary of the Treasury periodically thereafter to make adjustments to that rate based upon the adjusted prime rate charged by banks. Pub. L. 93–625, sec. 7, 88 Stat. 2114 (1975).[5] The Senate Finance Committee, where the provision making the change originated, explained the purpose of increasing the interest rate as follows:

> Historically the 6 percent tax interest rate has been higher than the prevailing money market interest rate. * * * The purpose for this differential was to provide an incentive for the taxpayer to pay his tax promptly and for the Government to credit or refund overpayments promptly. However, money market rates are currently (and for several years have been) at significantly higher levels than 6 percent. * * * As a result, the present statutory interest rate no longer serves the purposes for which it was originally intended.
>
> *    *    *    *    *    *    *
>
> In those cases where the 4-percent interest rate applies, although an extension of time to pay a tax may be appropriate in certain cases in order to avoid unnecessary hardship, the committee sees no sound reason to permit some taxpayers to pay interest at a lower rate than other taxpayers are required to pay on underpayments of tax. Relief from the hardship of paying taxes in a lump sum should not also mean that the interest rate should be reduced if payments are made in installments. This is particularly so if a closely held business owned by an estate, or a business which has recovered an expropriation loss, is or can be earning a significantly higher return on the tax money which it presently can, in effect, borrow from the Government at 4 percent.
>
> [S. Rept. 93–1357, at 19–20 (1974), 1975–1 C.B. 517, 528.]

Petitioner maintains that "retroactive" application of the 9-percent and the variable rate to it would violate constitutional due process guarantees.[6] In effect, petitioner contends that it had a vested right to pay 4-percent interest on its estate tax liability and that Congress retroactively, and therefore unconstitutionally, changed that rate. Respondent contends that

---

[5] The 4-percent interest rate was reinstated, for a certain portion of estate taxes payable on the installment method, by the Tax Reform Act of 1976 (Pub. L. 94–455, 90 Stat. 1520). See sec. 6601(j). This change was made because "some businesses are not so profitable that they can yield enough to pay both the estate tax and interest where the interest rate is high." S. Rept. 94–938 (Part 2) 18 (1976), 1976–3 C.B. (Vol. 3) 660.

[6] Petitioner's constitutional argument includes petitioner's contention that respondent is estopped, by the lower interest rate in effect when the election was made, from applying the 9-percent and the variable rate. This argument is merely a restatement of petitioner's contention that Congress could not retroactively change the interest rate applicable to it.

petitioner merely elected, pursuant to section 6166(b), a "modifiable" payment schedule, that such schedule was subsequently modified, and that such modification was constitutional as to future installment payments required from petitioner.

Initially, we note that, in terms of both the applicable statutory language and the relevant legislative history, the change in interest rate was made applicable to installment payments required to be made by petitioner from and after July 1, 1975. Section 7(e) of Pub. L. 93–625 specifically provides:

(a) EFFECTIVE DATE.—The amendments made by this section shall take effect on July 1, 1975, and *apply to amounts outstanding on such date* or arising thereafter. [Emphasis added.]

And the Senate Finance Committee report refers to "cases where the time for payment of an estate tax * * * has been extended" and states that the amendment is to take effect on July 1, 1975, and apply "to a liability which arose before that date and continues outstanding in part or whole thereafter (but only on the portion which remains outstanding after July 1, 1975)." S. Rept. 93–1357, *supra* at 20–21, 1975–1 C.B. at 529. Thus, petitioner's obligation as originally constituted was changed (see *Estate of Adams v. United States,* 550 F. Supp. 175 (N.D. Okla. 1981)), and, to that extent, the statutory provision in question had a retroactive effect. The question before us is whether such legislative action was constitutionally permissible. We hold that it was.

The parties have devoted a considerable portion of their briefs to an argument as to whether or not the change in the interest rate constituted a retroactive tax. We think that such argument is irrelevant. We have held that interest on estate taxes is not a tax. *Estate of Bahr v. Commissioner,* 68 T.C. 74 (1977). Moreover, even if interest, in the context of this case, is a tax, the change in the rate of interest would constitute no more than a change in the rate of tax and would clearly be constitutional. *United States v. Darusmont,* 449 U.S. 292 (1981); *Welch v. Henry,* 305 U.S. 134 (1938); *Milliken v. United States,* 283 U.S. 15 (1931). See also *Estate of Ceppi v. Commissioner,* 698 F.2d 17 (1st Cir. 1983), affg. on a different ground 78 T.C. 320 (1982). Petitioner's reliance on *Nichols v. Coolidge,* 274 U.S. 531 (1927), and *Coolidge v. Long,* 282 U.S. 582 (1931), is totally misplaced. Those cases involved the retroactive

application of an estate tax to transfers of property completed before a tax on such transfers was imposed. The same is true of *Untermyer v. Anderson*, 276 U.S. 440 (1928), and *Blodgett v. Holden*, 275 U.S. 142 (1927), modified 276 U.S. 594 (1928), involving the gift tax; the continued vitality of those cases is, in any event, open to question. See *Estate of Ceppi v. Commissioner*, *supra*, and cases cited therein; *Rose v. Commissioner*, 55 T.C. 28, 30 (1970). Petitioner's reliance on *Page v. Skinner*, 298 F. 731 (8th Cir. 1924), is likewise misplaced. That case merely involved a question of statutory interpretation as to the applicability of the rates of tax established by the Revenue Act of 1918 to the estate of a decedent dying before the effective date of that act; no constitutional issue was discussed.

As we view this case, the critical constitutional issue is whether petitioner's rights in a 4-percent interest rate with respect of future installment payments were so vested that the change in those rights was violative of the due process requirement of the Fifth Amendment to the Constitution. We posit our analysis on two observations by the Supreme Court. In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976), in which an employer was held liable for providing benefits to coal miners who suffered from black lung disease and to survivors of such miners even though employment of the miners terminated before the applicable statutory provision was passed, the Court stated (428 U.S. at 15–16)—

It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. * * *

To be sure, insofar as the Act requires compensation for disabilities bred during employment terminated before the date of enactment, the Act has some retroactive effect—although, as we have noted, the Act imposed no liability on operators until 1974. And it may be that the liability imposed by the Act for disabilities suffered by former employees was not anticipated at the time of actual employment. But our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. * * * This is true even though the effect of the legislation is to impose a new duty or liability based on past acts. [Citations omitted. Fn. ref. omitted.]

And in *Lynch v. United States*, 292 U.S. 571 (1934), which held that renewable term war risk insurance constituted a contract of the United States which the United States could

not constitutionally abrogate, the Court observed (292 U.S. at 577)—

Pensions, compensation allowances and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress. On the other hand War Risk policies, being contracts, are property and create vested rights. The terms of these contracts are to be found in part in the policy, in part in the statutes under which they are issued and the regulations promulgated thereunder. [Citations omitted.]

Petitioner seeks to bring itself within the ambit of *Lynch* by arguing that its election to pay its estate tax in installments constituted a contract with the United States and is entitled to the same protection accorded the war risk insurance contracts. We disagree. We think that the election was no more than a privilege and does not rise to the level of that type of contract with the United States which is entitled to constitutional protection. In *Lawler v. Commissioner*, 78 F.2d 567 (9th Cir. 1935), affg. on this issue 29 B.T.A. 227 (1933), the Court of Appeals stated in respect of an installment election for purposes of the income tax (78 F.2d at 570)—

Certainly it cannot be said that the fact that a party has taken advantage of an election to pay a tax in installments instead of at one time, is such a contract between the government and the taxpayer as prevents taxation upon income to accrue in any other or different manner than that provided by law at the time the taxpayer elected to pay in installments. * * *

The fact of the matter is that, absent the right of election to pay its estate tax over 10 years, with the accompanying 4-percent interest rate, petitioner would have been required to pay 6-percent interest on any portion of the tax not paid on the due date of the return. Under such circumstances, we are not prepared to embrace a concept of constructive "borrowing" in order to create a "contract" with the United States and thus a vested right in petitioner, thereby providing a constructive foundation for holding that the change in the rate of interest was unconstitutional.

Finally, we note that, in *League v. Texas*, 184 U.S. 156 (1902), the Supreme Court upheld the constitutionality of an

1897 Texas act which retroactively charged interest on delinquent real estate taxes then due and owing.[7] It "is not a matter of doubt," the Court observed (184 U.S. at 158) —

That a State may adopt new remedies for the collection of taxes and apply those remedies to taxes already delinquent, without any violation of the Federal Constitution * * * . A delinquent taxpayer has no vested right in an existing mode of collecting taxes. There is no contract between him and the State that the latter will not vary the mode of collection.

Moreover, the Court continued (184 U.S. at 161–162) —

As the state may, in the first instance, enact that taxes shall bear interest from the time they become due, so, without conflicting with any provision of the Federal Constitution, it may in like manner provide that taxes which have become delinquent shall bear interest from the time the delinquency commenced. This is adding no novel or extraordinary penalty, for interest is the ordinary incident to the non-payment of obligations.

The interest rate change at issue herein is clearly constitutional under the rationale of *League v. Texas*. In fact, the instant case is an "easier" case for respondent than *League v. Texas* for two reasons. First, the interest rate change herein was a mere change in the rate while in *League v. Texas* interest was being charged for the first time. Second, the higher interest rate was charged herein only from a date following the date of enactment while the statute in *League v. Texas* charged interest retroactively from the date of delinquency.

We recognize that petitioner may have relied upon the 4-percent interest rate in making its election and in taking other actions and that, as a result, it may seem inequitable to require it to pay a higher rate of interest on future install-

---

[7]The action arose from a suit filed in 1898 by the State of Texas to enforce a tax lien on property, averring that the defendant owed the State $1,305.87 in taxes, interest, penalties, and costs due on certain lands for 1884–96, inclusive. The property in question was owned in 1884 by someone other than the defendant. At some point thereafter, the land was sold by the State and, pursuant to statute, was bid in by the State for taxes owed by 1984; at no time between 1885 and 1898 was the property redeemed from the State. The defendant alleged that he acquired the land in 1889 but does not allege that he acquired it from the State. "The case * * * presented," the U.S. Supreme Court observed, "is one of a party, admitting that valid taxes have been duly levied on his property and have not been paid, who is contesting the manner in which the state shall collect them, and insisting that the only method which it can adopt for such collection is one which has hitherto proved ineffectual." *League v. Texas*, 184 U.S. 156, 158 (1902). The Court held that the State could retroactively charge interest on the taxes due as a prerequisite to waiving its interest in the land the defendant claimed title to.

ments of its estate tax. But legislation which imposes "liability * * * not anticipated" and "upsets otherwise settled expectations" is not necessarily unlawful. See *Usery v. Turner Elkhorn Mining Co., supra.* Further, as the Court of Appeals stated in *Prather v. Commissioner*, 322 F.2d 931, 934 (9th Cir. 1963), affg. a Memorandum Opinion of this Court, in which section 481(a)(2) relating to changes in accounting methods was held constitutional, "Equitably the terrible penalty of the income bunching here leaves one disturbed, but we cannot yet find unconstitutionality." To the extent that the statutory provision changing the interest rate has a retroactive effect, it is not "so harsh and oppressive as to transgress the constitutional limitation." See *Welch v. Henry, supra* at 147. See also *Westwick v. Commissioner*, 636 F.2d 291, 293 (10th Cir. 1980), affg. a Memorandum Opinion of this Court. We hold to the same views herein.

Having held that the statutory provision changing the rate of interest is applicable to petitioner, we need not consider petitioner's further argument that, had we held otherwise, the absence of a "savings clause" in the enacting statute would have relieved petitioner of the obligation to pay any interest whatsoever.

In view of the foregoing,

*Decision will be entered in accordance with respondent's Rule 155 computation.*