GREENSBORO GAS COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73708.   Promulgated July 31, 1934.

*Hoyt A. Moore, Esq., Douglas M. Moffat, Esq.,* and *Joseph C. White, Esq.,* for the petitioner.

*J. E. Marshall, Esq.,* for the respondent.

1364

OPINION.

TRAMMELL: The sole issue in this case is the amount of the deduction to which the petitioner is entitled on account of depletion of its natural gas properties, but in that connection two specific questions arise with respect to which the parties are in disagreement. The first

question is whether the gross income from the properties, within the meaning of section 204 (c) (2) of the Revenue Act of 1926, is the total proceeds of sales of gas after transportation through petitioner's distribution system of pipe lines, compression stations, and meters, or whether such gross income comprehends only that portion of the total proceeds of sales which properly represents the amount received for the gas at the wells, commonly referred to as the market or field price. The second question is whether or not in computing gross income from the properties an amount equal to rents and royalties should be excluded or deducted from the total proceeds of sales.

Section 204 (c) (2) of the Revenue Act of 1926 provides as follows:

(2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

Aside from the production and sale of oil, the sole business of the petitioner was the purchase, production, transportation, and sale of raw or natural gas to consumers. During the taxable period the petitioner produced from wells on its properties 1,164,328 thousand cubic feet of gas, for which, less losses in transit, it received $466,244.46. Petitioner contends that this amount, actually received from the sale of the gas, constitutes " the gross income from the property " under section 204 (c) (2), *supra*, for the purpose of determining the allowable deduction for depletion.

Respondent determined a total gross income from the petitioner's properties of $251,650.95 for purposes of depletion, this amount being arrived at by first computing separately the gross income from each of the several properties in question and adding together the gross incomes so computed, using as a basis the market or field price of the gas before transportation from the properties, which market or field price respondent determined to be 23 cents per thousand cubic feet, and deducting certain rents and royalties.

The stipulated facts show that the distance between the various points of production and consumption of the gas varied from one to twenty-five miles, and that the petitioner's depreciated investment in gas mains, compression stations, pipes, and general equipment used in the transportation of gas to consumers amounted to more than $1,300,000 as of January 1, 1926. During the taxable period the petitioner paid or incurred expenses and sustained depreciation in the aggregate amount of $106,677.54 in the production of gas, and paid or incurred expenses and sustained depreciation in the aggre-

gate amount of $116,485.12 in the transmission and sale of the gas so produced.

These facts, we think, very clearly indicate that a substantial part of the petitioner's total gross income of $466,244.46 is attributable directly to the transportation and distribution of the gas, and can not fairly be said to be income from the gas-producing properties. The language of the statute is plain and unambiguous; the allowance for depletion is measured by the specified percentage " of the gross income from the property during the taxable year." This language can only be construed as referring to the property with respect to which the depletion allowance is sought. Income from all other sources must be excluded in computing the depletion allowance.

The expenses paid or incurred by the petitioner in connection with its business of transporting and distributing the gas exceed the expenses of producing the gas. If the total gross income was in fact derived from the respective businesses of production and distribution in proportion to the expenses incurred in each, then slightly less than half of the petitioner's total gross income may be allocated to production and classified as " the gross income from the property " which is the subject of the depletion allowance. Respondent, however, determined the " gross income from the property " of the petitioner to be the amount of $251,650.95, or in excess of 50 percent.

It seems obvious that the price at which petitioner sold its gas to ultimate consumers included a charge for, and petitioner derived income thereby from, its services in transporting and distributing the gas and the use of properties for that purpose, in which properties the petitioner had the very substantial investment of more than $1,300,000. Such income, in our opinion, can not be said to be " gross income from the property " which produced the gas and in respect of which petitioner claims an allowance for depletion.

This conclusion is supported by the fact, stipulated by the parties, that during the taxable period petitioner purchased 52,344 thousand cubic feet of gas at a cost of approximately 21 cents per thousand cubic feet, transported the same through its gas mains and sold the gas to consumers at a price of approximately 40 cents per thousand cubic feet. The difference between the purchase and sale prices, to the extent that it exceeded cost of transportation, represented income derived by the petitioner from its services and investment in the properties used in transportation, and it would hardly be contended that such income constituted " gross income from the property " (in this instance not owned by the petitioner) which produced the gas. So also, if the petitioner had sold its gas at the wells and the same had been transported and distributed by others the increased price

for distribution would not constitute " gross income from the property " of the petitioner, which produced the gas.

It is immaterial, we think, that petitioner transported and distributed the gas produced from its own properties. The income derived from the business of transportation and distribution, whether conducted by the petitioner or another, is not " gross income from the property " which produced the gas, within the meaning of the statute providing an allowance for depletion. Only that portion of the petitioner's total gross receipts which represents gross income from the operation of its gas-producing properties may be used as the basis for computing depletion. If 27½ per cent of the total gross income of the petitioner were allowed as a deduction for depletion it would in effect amount to an allowance for depletion not only on the depletable property, but would also include an allowance for depletion on the transportation equipment, which is not subject to depletion but only to depreciation. Clearly Congress had no intention of allowing the percentage depletion on anything except a natural resource itself. Cf. *Brea Canon Oil Co.*, 29 B.T.A. 1134, and *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56.

The respondent has determined the amount of petitioner's " gross income from the property " on the basis of a market or field price of 23 cents per thousand cubic feet before transportation from the properties, and the petitioner does not attack respondent's computation, nor does it offer evidence to show that the market or field price so determined by the respondent is not correct. Respondent's determination of the fair market or field price is further supported by the fact that during the taxable period the petitioner purchased gas at a price, before transportation, only slightly in excess of 21 cents per thousand cubic feet. On the first point, respondent's action is approved.

The second question is whether or not an amount equal to rents and royalties should be excluded from the total gross receipts from sales of gas in computing " the gross income from the property " under section 204 (c) (2), *supra*. In considering this question it should be remembered that section 234 (a) (8) of the 1926 Act *authorizes* the deduction for depletion, and that section 204 (c) (2) merely *provides the method* or basis for the computation of the allowance. Therefore, section 204 (c) (2), quoted above, must be interpreted in the light of the provisions of section 234, which reads in material part as follows:

SEC. 234. (a) In computing the net income of a corporation * * * there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued

use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(8) In the case of mines, oil and gas wells \* \* \* a reasonable allowance for depletion and the depreciation of improvements, according to the peculiar conditions in each case; \* \* \* In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

The petitioner urges that the last provision of subdivision (8), which requires that deductions for depletion and depreciation in the case of leases shall be equitably apportioned between the lessor and lessee,.has no application to oil and gas wells. We can find no support for such contention.

In *Twin Bell Oil Syndicate*, 26 B.T.A. 172, 177, after quoting sections 234 (a) (8) and 204 (c) (2) of the 1926 Act, *supra*, we said:

The above provision (Sec. 234 (a) (8)) is mandatory in two respects; first, that there shall be allowed as a deduction a reasonable allowance for depletion, and, second, that such deduction shall, in the case of leases, be equitably apportioned between the lessor and the lessee.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Reading the two sections together, that is, the one authorizing a deduction for depletion (234 (a) (8)) and the other prescribing the basis (204 (c) (2)), it is clear that the reasonable allowance for depletion in the case of oil and gas wells on leased property, which is to be equitably apportioned between the lessor and the lessee, is 27½ per cent of the gross income from the property during the taxable year. \* \* \*

The. petitioner, as lessee, had a three-fourths interest in the oil produced from the wells, the other one-fourth interest being in Batson, the lessor, and Andrews, the original lessee. The depletion allowance with respect to the oil and gas wells is 27½ per cent of the gross income from the wells, equitably apportioned between petitioner, Batson and Andrews.

The depletion allowance determined by the Commissioner is 27½ per cent of the petitioner's share of the gross income from the oil and gas wells, which amount is exactly the same as would have been determined if the Commissioner had taken 27½ per cent of the total gross income from the property and apportioned three-fourths of such amount to the petitioner.

It may be noted that the respondent has pursued the same method of computation in the instant case, that is to say, he deducted the amount of the rents and royalties from the gross proceeds of sales of gas from properties, and computed petitioner's allowance for depletion on the remainder representing its share of the gross income, which produces exactly the same result as if the total allowance for depletion had been first computed and then apportioned between the lessors and the petitioner, the lessee.

Petitioner concedes that such procedure is proper in the case of those leases which provided for the payment of a portion of the gas as rents and royalties, but in respect of the other leases which provided for the payment of rents and royalties in money, the petitioner

contends that the amount so paid should not be excluded or deducted from gross receipts in determining gross income from the properties.

We think there is no merit in this contention. It is unimportant whether the lessors were to receive a portion of the gas produced as rents and royalties or whether the contracts provided for the payment of fixed amounts in money. Where the rent reserved is a specified portion of the gas produced, the entire production is sold and the proceeds from the sale of the lessor's portion paid over to him. In this situation the petitioner does not contend that the lessor's portion of the gas should be included in the gross income of the lessee. Where the rents and royalties are payable in money the lessee sells the entire production and pays over to the lessor the amount specified, and thus in either case the lessee's share of " the gross income from the property " is the total gross receipts less rents and royalties.

In whatever form rents and royalties may be payable, the lessor, as well as the lessee, has an economic interest in the property, and is entitled to depletion computed on such basis, which right does not depend upon the lessor's retention of ownership or any other particular form of legal interest in the mineral content of the land. *Palmer* v. *Bender*, 287 U.S. 551. And see also *Murphy Oil Co.* v. *Burnet*, 287 U.S. 299. The lessor is entitled to depletion allowance on bonus and royalties, even though by the local law ownership of the minerals in place passed from the lessor upon the execution of the lease. *Burnet* v. *Harmel*, 287 U.S. 103.

Section 234 (a) (1) of the statute, *supra*, permits the deduction of rental or like payments in computing net income only where the lessee corporation has not taken and is not taking title to the property and has no equity therein. In the case of oil and gas wells, a lessee corporation acquires an equity in the property by the payment of rents and royalties. It thereby acquires the right to extract the oil and gas for its own profit. It is more than the mere right of occupancy and use of the premises. It is a right to reduce to possession the oil and gas for the lessee's use, and the lessee at least acquires an equity in the leased property. Under Pennsylvania law, the lessee acquires an interest in the realty. See *Brown* v. *Beacher*, 120 Pa. St. 590; 15 Atl. 608; *McElwaine's Appeal* (Pa.), 11 Atl. 453.

Rents and royalties paid by a lessee in the case of oil and gas wells are fundamentally in the nature of capital expenditures; they represent to the lessee the cost of the oil or gas sold. Hence an amount equal to such payments must be deducted from gross receipts to determine the lessee's gross income from the property, or the deduction for depletion must be computed on gross receipts and then apportioned between the lessor and lessee. Otherwise there would be included in the lessee's gross income, which is the basis for computing the net taxable income, that which is not true income,

but the return of the cost of that which was sold. Gross income from a business in which sales of property are involved does not include the cost of the property sold. The capital outlay for the cost must be subtracted from gross receipts. We must keep in mind the distinction between gross receipts and gross income. The depletion deduction is based on gross income and not gross receipts. The situation presented here is analogous to that of a merchant who is required to deduct from his gross receipts the cost of goods sold in determining gross income. It is only the latter which is the basis for computing depletion in the case before us.

A lease involving natural resources, including oil and gas wells, is essentially different from a lease of other kinds of property, such as a house, for example. In the case of a natural resource, both the lessor and lessee have an economic interest in the property, which is exhausted or depleted by production, hence each is entitled to a deduction for depletion, according to the extent of his interest or investment. In all other cases the lessor is the owner of the whole property, in which the lessee has no investment or economic interest; the lessee merely acquires a right to the possession and use of the property in accordance with the terms of his contract, and is, therefore, not entitled to any allowance for exhaustion of the property, but may deduct from gross income under section 234 (a) (1) *supra*, as a business expense the amount of the rental paid.

It is because of these basic facts that Congress has provided in section 234 (a) (1) for the deduction as business expenses of rentals only where the lessee has not taken or is not taking title to the property, " or in which it has no equity." In harmony with the same principles and for the same basic reasons, Congress has further provided in subdivision (8) of section 234 (a) that in the case of leases of natural resources, including oil and gas wells, the deduction allowed for depletion shall be equitably apportioned between the lessor and lessee. It is significant that the provision does not apply to leases of any kind of property except natural resources. It is the same consideration, in our opinion, which led Congress to adopt a qualifying amendment in the Revenue Act of 1934, which will be further discussed hereinbelow, making mandatory the exclusion from the lessee's gross income of an amount equal to any rents or royalties paid in respect of oil and gas wells.

The principles above referred to have been recognized by the Supreme Court of the United States in numerous cases. In *Lynch* v. *Alworth-Stephens Co.*, 267 U.S. 364, the interests of the lessor and lessee in mining property were defined by the Court as follows:

It is said that the depletion allowance applies to the physical exhaustion of the ore deposits, and since the title thereto is in the lessor, he alone is entitled to make the deduction. But the fallacy in the syllogism is plain. The deduc-

tion for depletion in the case of mines is a special application of the general rule of the statute allowing a deduction for the exhaustion of property. While respondent does not own the ore deposits, its right to mine and remove the ore and reduce it to possession and ownership is property within the meaning of the general provision. Obviously, as the process goes on, this property interest of the lessee in the mines is lessened from year to year, as the owner's property interest in the same mines is likewise lessened. There is an exhaustion of property in the one case as in the other; and the extent of it, with the consequent deduction to be made, in each case is to be arrived at in the same way, namely, by determining the aggregate amount of the depletion of the mines in which the several interests inhere, based upon the known value of the property, and allocating that amount in the proportion to the interest of each severally considered.

And again in *Palmer* v. *Bender, supra,* the Court said:

The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.

That the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted was recognized by this court in *Lynch* v. *Alworth-Stephens Co.* * * * There a depletion allowance under section 12 (a) of the 1916 Act * * * was claimed by a lessee of a mining lease, in the computation of tax on income from the proceeds of ore mined. The statute made no specific reference to lessees, and the government argued that, as the lessee acquired no ownership of the ore until the severance from the soil, * * * the lease gave him no depletable interest in the ore in place. But this Court held that, regardless of the technical ownership of the ore before severance, the taxpayer by his lease, had acquired legal control of a valuable economic interest in the ore capable of realization as gross income by the exercise of his mining rights under the lease. Depletion was therefore allowed.

Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if by virtue of the leasing transaction he has retained a right to share in the oil produced. If so, he has an economic interest in the oil, in place, which is depleted by production. Thus we have recently held that the lessor is entitled to a depletion allowance on bonus and royalties, although by the local law ownership of the minerals in place passed from the lessor upon the execution of the lease. * * *

In the present case the two partnerships acquired by the leases to them, complete legal control of the oil in place. Even though legal ownership of it, in a technical sense, remained in their lessor, they, as lessees, nevertheless acquired an economic interest in it which represented their capital investment and was subject to depletion under the statute.

For the reasons indicated we are impelled to the conclusion that both the lessor and lessee in the case of an oil or gas lease have an economic interest in the depletable property where taxable income is derived by production, and that each is entitled to an allowance for depletion according to his interest; that the total allowable deduction is required by the statute to be equitably apportioned between the lessor and lessee, which apportionment may be accomplished by allo-

cating to each party his proportionate part of the total deduction computed upon the basis of the gross receipts from the property, or the lessee's deduction may be determined on the basis of his share of the gross income from the property, arrived at by deducting from gross receipts, and thus excluding from the total gross income, an amount equal to the rents and royalties paid or incurred by the lessee in respect of the property.

In reaching the conclusion above indicated, we have carefully considered the recent opinion of the United States Circuit Court of Appeals for the Ninth Circuit, reversing our decision on this point in *Twin Bell Oil Syndicate* v. *Helvering*, 70 Fed. (2d) 402, but with all due deference to the court, we are unable to concur in its views.

Section 204 (c) (2) of the Revenue Act of 1926, hereinabove quoted, which authorized for the first time the percentage deduction for depletion in the case of oil and gas wells, was reenacted in identically the same language as section 114 (b) (3) of the Revenue Act of 1928. The respondent construed this section as requiring the exclusion from gross income of rents and royalties in computing the $27\frac{1}{2}$ per cent deduction for depletion under both the 1926 and 1928 Acts. Thereafter, the same provisions were again reenacted as section 114 (b) (3) of the Revenue Act of 1932, with an amendment which added the words " excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property." Thus, Congress incorporated into the statute the prior practice of the respondent.

The legislative history of the enactment, we think, indicates that the purpose of the amendment was to clarify the existing law— not to change it and declare a new rule. The amendment in question originated in the Senate, and was offered in the following circumstances:

Mr. SMOOT:  * * *  I may also say that I have 10 or 11 other amendments of a clarifying nature which I want to offer following the one now offered.

Mr. KING: I think my colleague should state that the amendments which he is about to offer were all presented to the committee, considered by the committee, and unanimously agreed to by it.

Mr. SMOOT: Yes; and they were all prepared by the Treasury Department. [Congressional Record, vol. 75, part 10, pp. 11629, 11630.]

The amendment to section 114 (b) (3) (numbered 53) was one of the clarifying amendments so offered by Senator Smoot and was adopted by the Senate. In conference the amendment was accepted by the House, and in the Conference Report, at page 14, it was stated:

*Amendment No. 53:* This amendment makes it clear that in computing the gross income from the property, for the purpose of determining the allowance for percentage depletion in the case of oil and gas wells, there shall

be excluded from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property; and the House recedes.

It is obvious, we think, that amendment No. 53 was not prepared by the Treasury Department, and was not enacted by the Congress, for the purpose of changing the prior law and establishing a new rule, but to recognize the prior practice under the 1926 and 1928 Acts and " crystallize it into statute law."

In *Commissioner* v. *Liberty National Co.*, 58 Fed. (2d) 57, it was held that the enactment of a provision in the Revenue Act of 1928, relating to transactions between affiliated corporations, did not demonstrate that such was not the law prior to 1928. The court said:

The conclusion does not follow. In *Luckenbach S. S. Co.* v. *United States*, 280 U. S. 173, * * * the court held a statute was enacted not to change the prior practice, but to recognize it and crystallize it into statute law. So here.

*Fire Companies Building Corp.*, 23 B.T.A. 550, 554, involved a situation somewhat similar in principle to the present case. The question there was whether an insurance company might be included in a consolidated return with an ordinary corporation not engaged in the insurance business, within the meaning of section 240 of the 1926 Act, which provided that affiliated corporations might make consolidated returns. The section did not specifically exclude insurance companies. By a Senate amendment to section 141 (e) of the 1928 Act it was provided that insurance companies should not be included in the same consolidated return with other corporations. In reference to this provision, the Conference Committee reported that " The House recedes with a clarifying amendment to subdivision (e) of the Senate amendment providing specifically that an insurance company * * * shall not be included in the same consolidated return with a corporation subject to tax imposed in section 13." In considering the effect of the amended provision in the 1928 Act, we said:

The Committee referred to the change contained in the Revenue Act of 1928 excluding insurance companies from a consolidated return with other corporations as being a clarifying provision. In other words, they expressed the view that this was put in the 1928 Act for the purpose of clarifying what had been contained in the 1926 Act.

From what we have said above, we think that it was the intention of the 1926 Act that insurance companies should not be included in a consolidated return with other corporations, and that the 1928 Act made that intention perfectly clear.

The Circuit Court of Appeals for the Second Circuit, in the case of *Merle-Smith* v. *Commissioner*, 42 Fed. (2d) 837, has recently held that a subsequent statute may be construed as a clarification of a previous act rather than as a change in the law.

On appeal, our reasoning in the above case was substantially approved, and our decision affirmed, by the United States Circuit Court of Appeals for the Second Circuit at 54 Fed. (2d) 488.

Application of the same reasoning here leads us to conclude that the proper construction of section 204 (c) (2) of the 1926 Act requires that in computing gross income from the property, for the purpose of determining the allowance for percentage depletion in the case of oil and gas wells, there must be excluded from gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property, and that the clarifying amendment to section 114 (b) (3) of the 1928 Act makes clear that such was the law under the 1926 Act.

Respondent's determination on the second point is approved.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, MURDOCK, McMAHON, GOODRICH, and LEECH concur in the result.