MESA PETROLEUM CO. (AS CORPORATE SUCCESSOR TO HUGOTON PRODUCTION COMPANY), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5139–69. Filed May 25, 1972.

*O. Don Chapoton* and *Richard R. Cruse*, for the petitioner.
*Robert Liken* and *Leslie A. Plattner*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for 1965 in the amount of $208,506.63. Most of the issues have been settled; the only issue remaining for decision is the proper amount of petitioner's percentage depletion deduction under section 613.[1]

### FINDINGS OF FACT

Mesa Petroleum Co., a corporation chartered under the laws of Delaware, has its principal office at Amarillo, Tex. It is the surviving corporation of a merger, on April 30, 1969, with Hugoton Production Co. (hereinafter referred to as Hugoton). Hugoton was also chartered under the laws of Delaware; it maintained its executive offices in New York, N.Y., and its operating offices in Garden City, Kans. It filed its Federal income tax return for 1965 with the district director of internal revenue, Wichita, Kans.

During 1965, Hugoton was engaged in the production and sale of natural gas from wells in which it owned a working interest. The wells involved in this case were all located in the Grant and Stevens County portions of the Hugoton Gas Field of Kansas, known as the Hugoton Lease Block—an area of approximately 97,000 acres. All these wells were connected to a gathering system which ultimately converged at a central point.

Gas which was not sold in the immediate vicinity of a well was moved through the gathering system to a natural gasoline plant centrally located on the Hugoton Lease Block. In this plant, the liquefiable hydrocarbons were removed from the gas and separated into the marketable products of natural gasoline, butane, and propane. Hugoton owned and operated both the gathering system and the natural gasoline plant.

Of the 37,289,531 MCF (at a pressure base of 14.65 p.s.i.a.) of gas produced from the wells during 1965, all but 4,631,320 MCF was transported to the natural gasoline plant for processing. After processing, the dry gas and the liquefiable hydrocarbons extracted during the processing were sold.

Hugoton obtained the right to extract the gas from the land under oil and gas leases. A royalty clause in one of the leases was construed by the Supreme Court of Kansas [2] to provide that the lessors were to receive one-eighth of the proceeds from the actual sale of the gas and its products, reduced by an aliquot share of the costs of transporting,

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

[2] *Matzen* v. *Hugoton Production Co.*, 182 Kan. 456, 321 P. 2d 576 (1958), rehearing denied Mar. 12, 1958.

processing, and marketing such gas and its products. This so-called *Matzen* formula was used during 1965 by Hugoton, pursuant to agreements with the landowners, to compute the royalty payments for all the lessors. Under this formula, the proceeds at the wellhead were 19.27 cents per MCF. The royalty payments, therefore, were 2.40875 cents per MCF (one-eighth of 19.27 cents), and the total royalties paid were $905,076.

The representative market or field price for gas at the wellhead during 1965 was 14 cents per MCF.

In the notice of deficiency, respondent computed the gross income from the property by reference to the representative market or field price and then reduced that amount by the $905,076 paid as royalties to the lessors. The remainder was determined to be the gross income from the property on which petitioner was entitled to compute its percentage depletion.

OPINION

Section 611(a) provides that "there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion." This deduction is designed to permit every person who has an economic interest in the minerals in place to recover his investment tax-free. *Kirby Petroleum Co.* v. *Commissioner*, 326 U.S. 599, 602–603 (1946). Only a single allowance is available for any mineral deposit, and it is to be apportioned between all persons having economic interests in the minerals in place. *Commissioner* v. *Southwest Expl. Co.*, 350 U.S. 308, 313 (1956); *Burton-Sutton Oil Co.* v. *Commissioner*, 328 U.S. 25, 32–34 (1946); *Helvering* v. *Twin Bell Syndicate*, 293 U.S. 312, 321 (1934).

In the case of a lease, both a lessor, whose interest stems from his ownership of the minerals in place, and a lessee, whose interest stems from his acquired right to extract such minerals, have depletable interests. *Palmer* v. *Bender*, 287 U.S. 551, 558 (1933). In recognition of these interests, section 611(b)(1) expressly provides that the depletion deduction "shall be equitably apportioned between the lessor and lessee." The apportionment gives the lessor a deduction computed with reference to the royalties he receives and the lessee a deduction calculated with reference to the share of the production which he is entitled to retain. *Helvering* v. *Twin Bell Syndicate*, *supra* at 320–321.

The formulae for computing the deduction allowed by section 611 are set forth in part in section 612, which refers to the taxpayer's cost basis, and in section 613, which authorizes "percentage" depletion. See *Helvering* v. *Twin Bell Syndicate*, *supra* at 318. Under this latter

section, the lessee's allowance is a specified percentage (27½ percent for gas in 1965) of the "gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property." Whichever method is chosen—cost or percentage—"the deduction must be apportioned between lessor and lessee." *Helvering* v. *Twin Bell Syndicate*, *supra* at 320.

The computation of the amount of the "gross income from the property" under section 613 creates no problem where gas is sold in the immediate vicinity of the well. Such gross income is the amount for which the gas is actually sold. *Shamrock Oil & Gas Corp.*, 35 T.C. 979, 1029 (1961), affd. 346 F. 2d 377 (C.A. 5, 1965), certiorari denied 382 U.S. 892 (1965).

Where the gas is not sold at the well but is manufactured or converted into a refined product or is transported from the premises of the well prior to sale, an artificial price must be established. The gross income from the property in such situations, according to the regulations, "shall be assumed to be equivalent to the representative market or field price of the oil or gas before conversion or transportation." Sec. 1.613–3(a), Income Tax Regs. This means that a calculation must be made of the weighted-average price received at the well on all sales of comparable gas within the competitive market area. This weighted-average price per MCF is then applied to the total number of MCF produced in computing the total "gross income from the property." See *Panhandle Eastern Pipe Line Co.* v. *United States*, 408 F. 2d 690, 701 (Ct. Cl. 1969); *Shamrock Oil & Gas Corp.*, *supra* at 1034. The lessee's gross income from the property for depletion purposes is the amount which he has remaining after he has paid the royalties to the lessor. Sec. 613(a).

In computing the disputed deficiency, respondent followed the formula prescribed in the representative price regulation. See sec. 1.613–3 (a), Income Tax Regs. He multiplied a determined market or field price by the number of MCF produced from the wells and thus arrived at the total gross income from production. The payments to the lessors as royalties, computed under the *Matzen* formula, were then subtracted from the total production income, and petitioner's depletion deduction was calculated by applying 27½ percent to the remainder.[3]

Petitioner contends that this determination does not reflect an equitable apportionment of the depletion deduction between the lessors and petitioner, the lessee, as contemplated by section 611(b). He argues

---

[3] While 4,631,320 MCF were sold at the well at a price different than the representative market or field price, neither party contends that the gross income from the property should include the actual sales price for this gas.

that, under the leases, the lessors were entitled to only one-eighth (12.5 percent) of the depletable income; yet, under respondent's method, the lessors would receive 17.2 percent of the depletion allowance. The discrepancy between the 12.5 percent and the 17.2 percent is due to the use of the *Matzen* formula in computing the lessors' royalties and, in contrast, the use of the representative market or field price in computing the total gross income from the property.

Petitioner contends that this "inequity" can be corrected only by allowing it to compute its depletion deduction on the basis of (1) seven-eighths of the total gross income from the property computed under the representative market or field price, regardless of the amounts paid the lessors as royalties, or alternatively, (2) seven-eighths of the total gross income from the property computed under the *Matzen* formula.

The fault in petitioner's argument is in its major premise: that the leases entitled the lessors to royalties equal to only one-eighth (12.5 percent) of the production income computed under the representative market or field price. The meaning of the lease provisions here in question was litigated in *Matzen* v. *Hugoton Production Co.*, 182 Kan. 456, 321 P. 2d 576 (1958), and the Supreme Court of Kansas held that the royalty-owners were entitled to one-eighth of the proceeds of the actual sale of the gas and its products, reduced by an aliquot share of the costs of transporting, processing, and marketing the gas and its products. The words of the court were, in part, as follows (321 P. 2d at 582):

> The language "proceeds from the sale of the gas, as such," [contained in the lease provisions specifying the royalties to be paid by the lessee] must be construed from the context of the leases and the custom and practice in the field at the time they were executed, and we think where, as here, the gas produced is transported by the lessee in its gathering system off the premises and processed and sold, its royalty obligation is determined by deducting from gross proceeds reasonable expenses relating directly to the costs and charges of gathering, processing and marketing the gas. Thus, proceeds from the sale of gas, wherever and however ultimately sold, is the measure of plaintiffs' royalty, less reasonable expenses incurred in its gathering, transporting, processing and marketing.

Thus, the lessors were entitled under the leases to royalties in excess of one-eighth of what has been stipulated to have been the representative market or field price. They were entitled to one-eighth of the amounts actually received from the sale of the gas and its products, less a proportionate part of the transportation, processing, and marketing costs.

The lessors' rights under those leases measure the extent of their economic interests in the minerals in place. *Kirby Petroleum Co.* v. *Commissioner, supra* at 604. Under section 613(b)(1), they were en-

titled to a depletion allowance computed on the basis of 27½ percent of what they were actually paid as royalties, and under the explicit provisions of section 613(a), the amounts paid to the lessors must be excluded from petitioner's gross income in computing its percentage depletion deduction.

The payments to the lessors in excess of the customary one-eighth of the production income constituted royalties. The payments were so described in the leases. The amounts so paid were the consideration given the lessors for the privilege of extracting gas from under their lands. The lessors made no investments either in petitioner's transportation or processing facilities, and had no rights to share in the profits from those operations. Their income flowed solely from the amounts petitioner was willing to pay for the privilege of extracting the gas. Cf. *Grandview Mines* v. *Commissioner*, 282 F. 2d 700, 703–704 (C.A. 9, 1960), affirming 32 T.C. 759 (1959).[4]

For the purpose of apportioning the percentage depletion deduction, no inequity is caused by the provisions of the leases calling for the lessors to be paid royalties on some other basis than one-eighth of the representative market or field price of the gas. Royalty payments may take a wide variety of forms. They may take the form of a bonus (or advanced royalties) for the execution of a lease, *Burnet* v. *Harmel*, 287 U.S. 103, 111 (1932); they may be a percentage of the profits from the operation, *Kirby Petroleum Co.* v. *Commissioner*, *supra; Burton-Sutton Oil Co.* v. *Commissioner*, *supra* at 27; or, as in this case, they may be a percentage of the proceeds derived from the sale of processed gas, *William D. Gray*, 13 T.C. 265, 274 (1949), affd. 183 F. 2d 329 (C.A. 5, 1950). In all these situations, the royalty-owners are entitled to deductions for depletion based on what they are actually paid as royalties, and the lessees must deduct "this rent or royalty from their gross income from the sale of * * * [gas] from the property before taking the lessees' depletion." *Kirby Petroleum Co.* v. *Commissioner*, *supra* at 605.

The payment of royalties, in the instant case, in excess of one-eighth of the value of the gas at the wellhead does not create an inequity. Such larger payment merely demonstrates that the parties, when they negotiated the lease contracts, considered the exploitation rights conveyed thereby to be more valuable than one-eighth of the gas at the wellhead. Since petitioner acquired economic interests only in the gas not needed to pay the lessors' royalties, it is entirely equitable that petitioner's depletion allowance be based on the value of the wellhead gas to which it is entitled after paying such royalties. *Bur-*

---

[4] See also Miller, Oil & Gas Federal Income Taxation 121–122 (3d ed. 1957).

*ton-Sutton Oil Co.* v. *Commissioner, supra* at 34–35; *Thomas* v. *Perkins,* 301 U.S. 655, 662 (1937).[5] As stated by the Supreme Court in *Kirby Petroleum Co.* v. *Commissioner, supra* at 604:

An equitable apportionment is obtained by excluding from the lessee's gross income from oil or gas produced from the property, * * * [citation omitted] "an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property." * * *

Accordingly, we find no merit in petitioner's contention that, notwithstanding the amounts actually paid to the lessors as royalties, it is entitled to depletion computed on the basis of seven-eighths of the representative market or field price of the gas.

Nor do we find any merit in petitioner's contention that its gross income from the property should be computed for depletion allowance purposes under the same formula as the lessors' royalties, i.e., by use of the *Matzen* formula. As pointed out above, gross income for depletion purposes is to be computed by applying to the total production the price of the gas *at the well, Shamrock Oil & Gas Corp., supra* at 1029; such gross income is not to include any value added to the gas through transporting, processing, or marketing it. As established in litigation in which petitioner's predecessor-in-interest participated, the wellhead price to be used in making those computations is the representative market or field price. *Hugoton Production Co.* v. *United States,* 349 F. 2d 418, 426–427 (Ct. Cl. 1965); *Hugoton Production Co.* v. *United States,* 315 F. 2d 868 (Ct. Cl. 1963).[6] In the instant case, the parties have stipulated that the representative market or field price during 1965 was 14 cents per MCF. That value must be used, therefore, in computing the gross income from the property.

---

[5] In *Thomas* v. *Perkins,* 301 U.S. 655, 662–663 (1937), after reviewing *Palmer* v. *Bender,* 287 U.S. 551 (1933), and *Helvering* v. *Twin Bell Syndicate,* 293 U.S. 312 (1934), the Supreme Court summarized the cases as follows:

"As in the earlier of these cases the assignor was entitled to deduct depletion from income he received from his interest in the oil, so in the later one the assignee was not entitled to deduct from income received from its share an allowance for depletion attributable to the assignor's interest. The owner of an interest in the deposit is entitled to deduct for depletion of the part producing his income but may not deduct for depletion of a share belonging to another."

[6] In *Hugoton Production Co.* v. *United States,* 315 F. 2d 868, 870 (Ct. Cl. 1963), the Government argued that there was no established field price for gas in the Hugoton Field so that the gross income from the property should be computed using the proportionate profits method. See sec. 1.613–3(d), Income Tax Regs. Petitioner's predecessor-in-interest—Hugoton—successfully argued in that case that, under the regulations, the field price method must be used if a field price can be established. Two years later, the issue was again litigated but this time the roles were reversed—Hugoton argued that its gross income should be computed by use of the proportionate profits method. Again the Court of Claims held that the income from property in the Hugoton Field must be computed by use of the field price method. *Hugoton Production Co.* v. *United States,* 349 F. 2d 418, 426–427 (Ct. Cl. 1965). The gas involved in the instant case came from the same wells in the same gas field as that considered by the Court of Claims in the two foregoing cases, and the parties have now stipulated to the field price for such gas.

A fundamental reason the *Matzen* formula cannot be used in computing petitioner's depletion deduction is that the value of the gas, computed under that formula, includes all the profits derived from the gathering, processing, and marketing phases of petitioner's business. See *Matzen* v. *Hugoton Production Co.*, 321 P. 2d at 582; *Hugoton Production Co.* v. *United States*, 315 F. 2d at 890. To permit the use of that formula for the purpose of computing percentage depletion would improperly allow petitioner a depletion allowance on its gathering, manufacturing, and marketing profits. See *Greensboro Gas Co.*, 30 B.T.A. 1362, 1369 (1934), affd. 79 F. 2d 701 (C.A. 3, 1935); *Shamrock Oil & Gas Corp., supra* at 1035.[7]

We hold that petitioner's deduction for percentage depletion for 1965 is limited to 27½ percent of the difference between (1) the total production income computed with reference to the representative market or field price, and (2) the amounts paid as royalties to the lessors.

To reflect concessions made by both parties,

*Decision will be entered under Rule 50.*

---

[7] As this Court observed in *Shamrock Oil & Gas Corp.*, 35 T.C. 979, 1035 (1961), affd. 346 F. 2d 377 (C.A. 5, 1965), certiorari denied 382 U.S. 892 (1966):

"It is possible for a lessee to increase the royalty payments to an amount above the market price with the hope that, if royalty payments are to determine the representative market or field price, the increased royalty payment will sufficiently increase the depletion base of his seven-eighths interest so that the tax saving from an increased depletion allowance will be in excess of the cost of the additional royalty payment made. * * *"

We do not imply that the present leases were not bona fide. They were. But the possibility suggested in *Shamrock Oil & Gas Corp., supra*, emphasizes the importance of refusing to employ the *Matzen* formula in computing a lessee's gross income from the property.