*Decision will be entered under Rule 155.*

ESTATE OF JANE B. CEPPI, DECEASED, PETER B. CEPPI, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6843–80.　　Filed March 2, 1982.

*G. Quentin Anthony, Jr.*, for the petitioner.
*Pamela V. Gibson*, for the respondent.

OPINION

TANNENWALD, *Chief Judge*: Respondent determined a deficiency in petitioner's Federal estate tax of $7,296. After concessions, the sole issue to be decided is whether petitioner may deduct $3,000 from the date-of-death value of each of eight gifts made by Jane B. Ceppi, now deceased, on January 5, 1978, 10 days before her death.

This case was submitted fully stipulated pursuant to Rule 122.[1] The stipulation of facts is incorporated by this reference.

Petitioner is the Estate of Jane B. Ceppi, represented by its

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure. All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954 as amended and in effect at the time of the decedent's death.

executor, Peter B. Ceppi. At the time he filed the petition in this case, Peter B. Ceppi resided in Jamestown, R. I. Jane B. Ceppi died on January 15, 1978, in Jamestown, R. I. Ten days previously, she made eight gifts to eight different relatives. Each gift consisted of 75 shares of Dome Mines stock and 20 shares of Texas Instruments, and each gift had a value of $6,477.75 on January 5, 1978, and a value of $6,585.00 on January 15, 1978.

The parties agree that the value of the stock transferred by the decedent 10 days prior to her death is properly includable in her gross estate, and the only disagreement turns on whether $3,000 per donee is exempted from that value. This question, the parties agree, turns solely on the proper interpretation of section 2035(b)(2), as amended by the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, and the Technical Corrections Act of 1979, Pub. L. 96–222, 94 Stat. 194 (1980).

Section 2035(a) causes inclusion in a decedent's gross estate of the value of all property transferred by the decedent "during the 3-year period ending on the date of the decedent's death." As amended by the Tax Reform Act of 1976, section 2035(b)(2) (hereinafter the old law) negated the inclusion rule of section 2035(a) with respect to "any gift excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax)."[2]

As modified by the Revenue Act of 1978 (hereinafter the new law),[3] however, this subsection applied "to any gift to a donee made during a calendar year if the decedant was not required by section 6019 to file any gift tax return for such year with respect to gifts to such donee."

The scope of the new law is clear: the value of all gifts made within 3 years of the transferor's death is includable in the transferor's gross estate, except for those gifts made to a single

---

[2]Sec. 2503(b) reads in pertinent part:

In computing taxable gifts for the calendar quarter, * * * $3,000 of such gifts to [any] person less the aggregate of the amounts of such gifts to such person during all preceding calendar quarters of the calendar year shall not * * * be included in the total amount of gifts made during such quarter.

Thus, it establishes a per donee annual exclusion of $3,000.

[3]The reach of sec. 2035 has been sharply curtailed with respect to decedents dying after Dec. 31, 1981. See sec. 424, Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 317.

donee which do not aggregate more than $3,000 in any calendar year. See secs. 2035(a), 2035(b)(2), 2503(a), and 6019(a).[4] The scope of the old law, however, is less clear as to whether it created a per donee annual exclusion of $3,000 (the "subtraction out" interpretation) or simply embodied, like the new law, an exception for gifts to a given donee totaling less than $3,000 (the "de minimis" interpretation). There is no question that Congress sought to supplant the ambiguity of the old law with the clarity of the new[5] and, in keeping with that objective, provided that, with respect to estates of decedents dying after December 31, 1976, the new law should have retroactive application back to January 1, 1977 (see sec. 702(f)(2), Revenue Act of 1978, *supra*). As a result, because the (prospective) effective date of the Tax Reform Act of 1976 was also January 1, 1977, the old law is mooted if retroactive application of the Revenue Act of 1978 is given effect. Congress recognized that the retroactive application of the new law could work an injustice upon those who made gifts "in excess of $3,000 based upon the assumption that only the excess of the value over $3,000 would be included in the gross estate"[6]

---

[4]Sec. 6019(a) reads in pertinent part:

Any individual who in any calendar quarter makes any transfers by gift (other than transfers which under section 2503(b) are not to be included in the total amounts of gifts for such quarter * * * shall make a return for such quarter with respect to the gift tax * * *

[5]The new law is declared to be a "clarification" of the old law. See sec. 702(f)(1), Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2930. The legislative history of the old law casts no significant light on whether the "subtraction out" or "de minimis" interpretation was intended. The Committee on Ways and Means did not specifically address this issue (see H. Rept. 94–1380, at 12–14 (1976), reprinted in 1976–3 C.B. (Vol. 3) 735, 746–748), the Senate forerunner to the Tax Reform Act of 1976 did not address this issue, and the Conference Committee did no more than describe the amended sec. 2035 as "[providing] for the inclusion in the decedent's gross estate of all gifts (in excess of the $3,000 annual exclusion) made within the 3-year period prior to the decedent's death" (see S. Rept. 94–1236, 608 (1976), reprinted in 1976–3 C.B. (Vol. 3) 807, 958). Congress subsequently referred to this legislative history as "ambiguous." H. Rept. 96–250, at 65–66 (1979); S. Rept. 96–498, 86–87 (1979).

[6]The prevailing view after the enactment of the old law and before the enactment of the new law suggested that the old law embodied the "subtraction out" interpretation. See General Explanation of the Tax Reform Act of 1976 (Staff of the Joint Committee on Taxation), at 529, reprinted in 1976–3 C.B. (Vol. 2) 1, 541; S. Surrey, W. Warren, P. McDaniel & H. Gutman, Federal Wealth Transfer Taxation 257 (1977); Zaritsky, "The Estate and Gift Tax Revisions of the Tax Reform Act of 1976," 34 Wash. & Lee L. Rev. 353, 360 (1977); Ingram, "The Estate, Gift, Generation-Skipping, and Related Income Tax Provisions of the Tax Reform Act of 1976 and Some Estate Planning Observations," 1976 Utah L. Rev. 647, 746–747; Note, "Section 2035: Taxation of Gifts Made Within Three Years of Death," 19 B.C. L. Rev. 577, 589 (1978) (by implication).

(H. Rept. 96–250, at 66 (1979); S. Rept. 96–498, at 87 (1979)), and so, in the Technical Corrections Act of 1979, *supra*, sec. 107(a)(2)(F), Congress provided that executors could elect the "subtraction out" interpretation in lieu of the "de minimis" interpretation mandated by the Revenue Act of 1978. This election was only permitted with respect to gifts made in 1977, and thus, by its terms, was not available with respect to gifts made between January 1, 1978, and November 6, 1978.[7]

The chronology of the facts of this case places petitioner in the class of persons not entitled to the benefits of the election provided by the Technical Corrections Act of 1979. Petitioner argues that the law in effect when the gifts were made and when the decedent died (the old law) provided a "subtraction out" exemption of $3,000 per donee and that the new law constitutes a retroactive abolition of this exemption which violates the due process clause of the Fifth Amendment. Respondent, on the other hand, argues that the old law adopted the "de minimis" concept and that, even if it did not, there is no constitutional infirmity in the retroactive application of the new law. We travel the path to decision conscious of the admonition that Federal statutes should be interpreted to avoid constitutional questions. *Califano v. Yamasaki*, 442 U.S. 682, 692–693 (1979); *Lucas v. Alexander*, 279 U.S. 573, 579 (1929).

That, at the time of its enactment, the old law was susceptible of two interpetations cannot seriously be disputed. Its $3,000 exemption was tied to section 2503(b), which provided for a $3,000 per donee annual exclusion applicable to all gifts to a given donee *whether or not* their total exceeded $3,000. Thus, the cross-reference in the old law to section 2503(b) supports petitioner's "subtraction out" interpretation. On the other hand, respondent's "de minimis" interpretation

---

[7] The legislative history of the Technical Corrections Act of 1979 explains Congress' failure to extend the election to *all* gifts made before the new law was passed, as justified by action taken by the House of Representatives Committee on Ways and Means in October 1977. See H. Rept. 96–250, *supra* at 66; S. Rept. 96–498, *supra* at 87. That action, H. Rept. 95–700, at 73–74 (1977), was a forerunner to the new law as contained in the Revenue Act of 1978. It indicated the belief of the Committee on Ways and Means that the old law should be rephrased unequivocally to incorporate the "de minimis" theory, and, of course, that is what was done 1 year later. The actual bill under consideration when H. Rept. 95–700, *supra*, was drafted, however (Technical Corrections Act of 1977, H.R. 6715, 95th Cong., 1st Sess.), was not enacted, nor was anything similar passed during that session of Congress.

is supported by the old law's applicability being limited to "*any gift* excludable in computing taxable gifts by reason of section 2503(b)" (emphasis added), for if Congress had intended to enact petitioner's "subtraction out" theory, it would have been better served by a statute which applied to *that part of any gift or gifts* excludable by reason of section 2503(b).

As we have indicated (see note 5 *supra*), the legislative history of the old law fails to suggest whether Congress intended to enact a "subtraction out" or a "de minimis" provision. Respondent has not clarified the ambiguity by regulation, and our ability to properly interpret the old law is not helped by the content of the two possibilities, for neither approach is clearly superior to the other. Compare Cremer, "The 1981 Act and Section 2035: Problems and Possibilities," 35 Tax Law. 389, 396–398 (1982) (irrationality of "de minimis" approach) with H. Rept. 95–700 (see note 7 *supra*), at 73–74 (unfair administrative burdens imposed on executors by "subtraction out" approach). The only clear fixture on this bare terrain is the statement by the subsequent Congress in the new law that it was "clarifying" the exemption of section 2035(b)(2) to reflect its prior intent. See note 5 *supra*.

We recognize that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," *United States v. Price*, 361 U.S. 304, 313 (1960). But such views "should not be rejected out of hand as a source which a court may consider in the search for legislative intent," *Andrus v. Shell Oil Co.*, 446 U.S. 657, 666 n. 8 (1980).

while the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, *Teamsters v. United States*, 431 U.S. 324, 354, n. 39 (1977), such views are entitled to significant weight, *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974), and particularly so when the precise intent of the enacting Congress is obscure. [*Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980).]

We are faced in the case at bar with the task of interpreting an ambiguous statute whose meaning simply cannot be discovered by resort to the usual tools. In such circumstances, legislative assistance is entitled to great weight. See *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–381 (1969). This is particularly true when the legislature explicitly characterizes its action as a clarification. See *Greensboro Gas Co. v. Commissioner*, 30 B.T.A. 1362, 1374–1375 (1934), affd. 79 F.2d

701 (3d Cir. 1935). Indeed, not only is the new law called a clarification of the old law (see note 5 *supra*), but it was passed in title VII of the Revenue Act of 1978, which was labeled "Technical Corrections of the Tax Reform Act of 1976."

This is not a case where Congress has tried by legislative fiat to change an umambiguous law under the guise of clarification. Cf. *United Telecommunications, Inc. v. Commissioner*, 65 T.C. 278, 287 (1975), 67 T.C. 760 (1977), affd. 589 F.2d 1383 (10th Cir. 1978). We have an instance "Where the original law was subject to very serious doubt," and so, "by permitting subsequent amendments to control the former meaning[,] a great deal of uncertainty in the law is removed. And the legislature is probably in the best position to ascertain the most desirable construction." 2A J. Sutherland, Statutes and Statutory Construction, sec. 49.11, at 265 (Sands 4th ed. 1973). Such an approach is particularly apt where the legislative clarification came on the heels of the passage of the ambiguous statute. Compare *Greensboro Gas Co. v. Commissioner, supra.*

Under the circumstances herein, as between the two reasonable interpretations of the old law, we think it appropriate to accept the legislative clarification. Moreover, our interpretation of the old act avoids the constitutional question[8] (see p. 323 *supra*) which petitioner's "subtraction out" interpretation would raise, namely, whether the new law retroactively and unconstitutionally imposed a tax within the ambit of *Untermyer v. Anderson*, 276 U.S. 440 (1928)—a case whose continued vitality has been questioned (see *Shanahan v. United States*, 447 F.2d 1082, 1083 (10th Cir. 1971); *Rose v. Commissioner*, 55 T.C. 28, 30 (1970)).[9]

We hold that the old law prescribed a "de minimis" exception to the section 2035(a) general inclusion rule, and,

---

[8]We recognize that no constitutional question is directly involved, whichever interpretation of the old law is adopted, and that what is involved is interpreting the old law so as to avoid a constitutional question in respect of the new law. It seems clear, however, that the admonition of construing a statute to avoid a constitutional question (see p. 323 *supra*) extends to such a situation.

[9]Involved in any such question is whether the new law imposes a new tax or is simply the equivalent of a change in the rate or base of an existing tax. See *Westwick v. Commissioner*, 636 F.2d 291 (10th Cir. 1980), affg. a Memorandum Opinion of this Court. See also *United States v. Darusmont*, 449 U.S. 292 (1981).

that being the case, petitioner's constitutional argument becomes moot.

*Decision will be entered for the respondent.*